# EXHIBIT 2


Mr. John Vine
Covington & Burling
1201 Pennsylvania Ave., N.W.
P. O. Box 7566
Washington, D.C. 20044

Dear Mr. Vine:

This is in response to your request for an advisory opinion regarding the definition of plan assets under the Employee Retirement Income Security Act of 1974 (ERISA). Specifically, you inquire whether, under the circumstances presented, the assets of a trust established by an employer as a potential source of premium payments for health insurance held by an ERISA plan would constitute assets of the plan.

According to your representations, the Occidental Petroleum Corporation (the Corporation) has maintained a comprehensive medical plan for a number of years to provide group health coverage to the Corporation's salaried employees and retirees and to their dependents. The comprehensive medical plan is a self-insured arrangement that covers most of the cost of prescribed medical care and treatment for more than 36,000 individuals. Active employees who participate in the comprehensive medical plan are also covered under a dental plan maintained by the Corporation.

You represent that the Corporation pays medical and dental benefits for active employees from its general assets. However, the Corporation has determined that it is desirable to fund in advance the medical benefits that it provides to retired employees. Accordingly, the Corporation has amended its retirement plan to include a medical benefits account, as described in section 401(h) of the Internal Revenue Code of 1986 (the Code).

You state that approximately 50 of the employees covered by the comprehensive medical plan and the dental plan are "key employees" of the Corporation within the meaning of section 416(i) of the Code. You represent that the Corporation does not wish to fund medical benefits for its key employees through the medical benefits account in the retirement plan since the Code provides that contributions to this account on behalf of these employees will reduce their retirement benefits. Accordingly, the Corporation wishes to establish an arrangement (the Arrangement) in order to set aside a portion of its general assets to facilitate the payment of key employees' medical benefits.

According to your representations, the Arrangement will consist of four elements: 1) The Executive Medical Plan (the Plan), an insured plan offering medical and dental benefits to the Corporation's active and retired key employees and their dependents; 2) the Group Insurance Policy (the Group Policy), a policy providing for the payment of benefits under the Plan; 3) the Medical Benefits Policy Trust (the Policy Trust), a trust established pursuant to the Plan which will be exempt from the claims of the Corporation's general creditors; and 4) the Medical Benefits Premium Trust (the Premium Trust), a revocable trust established by the Corporation which will be subject to the claims of the Corporation's general creditors.

You describe the Plan as providing medical and dental benefits that match, as closely as possible, the benefits provided under the Corporation's broad-based group health plan for salaried employees. Because the Plan is fully insured, it will provide a few additional medical benefits that are mandated by state insurance law. The Corporation

will establish the Plan as an employee welfare benefit plan within the meaning of section 3(1) of ERISA. Accordingly, the Plan will include provisions that will satisfy the applicable provisions of ERISA.

The Corporation, you state, will obtain the Group Policy from a commercial insurance company. Pursuant to the Group Policy, the insurer will process claims under the Plan, and will pay any medical benefits to which employees, retired employees, or their dependents are entitled. The Group Policy will be an experience-rated policy. If the incurred claims and other charges for a particular policy year are less than the expected charges reflected in the premium for that year, the insurer may declare a retrospective rate credit. Any retrospective rate credit declared under the Group Policy may be allocated to a premium stabilization reserve, where it will be used to offset extraordinary charges incurred under the Group Policy in subsequent policy years. To the extent that any retrospective rate credit exceeds the amount that may be credited to a reasonable premium stabilization reserve, it will be refunded to the holder of the Group Policy. Any amounts credited to the premium stabilization reserve when the Group Policy is terminated will be used to reduce outstanding liabilities, deficits, and other expenses in accordance with the insurer's standard termination accounting practices; the remaining amounts will be refunded to the holder of the Group Policy.

The Policy Trust, according to your representations, will be established pursuant to a trust agreement entered into by the Corporation with a commercial bank. The Corporation will transfer the Group Policy (including any premium stabilization reserve under the Group Policy) to the Policy Trust. In addition, the Corporation will initially contribute a base amount to cover trustee's fees and other administrative expenses of the Policy Trust. The Policy Trust will include provisions that are intended to satisfy the applicable requirements of ERISA. The Policy Trust assets will be held for the exclusive purpose of providing group medical insurance coverage to participants in the Plan, and will not be available to satisfy the claims of general creditors of the Corporation.

Both the Plan and the Policy Trust agreement will require the Corporation to contribute to the Policy Trust such amounts as are necessary to maintain the base amount and to provide for the payment of any Group Policy premium that has not been paid in full by the due date for such premium. The Trustee of the Policy Trust (Policy Trustee) will present the Corporation with a demand for payment of Group Policy premiums as they become due. If the Corporation pays a Group Policy premium to the insurer, its obligation to contribute to the Policy Trust will be reduced by the amount of the premium payment. If the Corporation fails to make any premium payment by its due date, the Policy Trustee will pay the premium from the assets of the Policy Trust. The Policy Trustee will demand an additional contribution from the Corporation if the available assets of the Policy Trust are not sufficient to pay the premium then due. In addition, a special contribution requirement will be triggered if a "Special Circumstance," such as a change in corporate control, occurs.[1] After a "Special Circumstance" occurs, the Corporation will be required to make annual contributions that are sufficient, when aggregated with the assets already held in the Policy

---

[1] You represent that a "Special Circumstance" will occur if (i) the Corporation is dissolved or liquidated; (ii) as a result of a reorganization, merger, or consolidation that is not approved by a majority of the Corporation's Board of Directors, the Corporation's common stock is converted into cash or property, or into securities not issued by the Corporation; (iii) a person acquires substantially all of the Corporation's property or at least 35% of the voting power of the Corporation's outstanding stock; (iv) directors who were nominated for election by the Nominating Committee of the Corporation's Board of Directors cease to constitute a majority of the Corporation's directors; (v) the Corporation's stockholders receive a proxy statement seeking stockholder approval of an event described in clause (ii); or (vi) an action is announced that is intended to result in an event described in clause (iii) or (iv). However, a majority of the Corporation's Board of Directors (or, if an event described in clause (iv) has occurred, a majority of individuals who constituted the Board of Directors immediately before the event) may approve any of the foregoing events and determine that the event is not a "Special Circumstance."

Trust and any reserves maintained under the Group Policy, to fund the actuarially-determined present value of all future premiums that are expected to become due under the Group Policy.

You further represent that both the Plan and the Policy Trust agreement will require the Policy Trustee to make systematic, reasonable and diligent efforts to collect the required contributions. If the Corporation fails to make a contribution that is required under the Plan and the Policy Trust, the Policy Trustee will bring an action pursuant to section 502 of ERISA to enforce the contribution obligation. The Plan and the Policy Trust agreement will provide that the Policy Trustee where such action is taken may seek interest on the unpaid contribution, liquidated damages, and attorney's fees and costs.

The Policy Trust will terminate when the Executive Medical Plan terminates, or when the Corporation purchases single-premium individual medical insurance policies to provide benefits to individuals covered under the Executive Medical Plan. If surplus assets remain in the Policy Trust upon termination of the Plan, after all benefits under the Executive Medical Plan have been paid or insured through individual policies, the surplus assets will be returned to the Corporation.

You represent that the Corporation will also establish the Premium Trust pursuant to an agreement with a commercial bank to permit it to set aside a portion of its general assets to pay premiums on the Group Policy as they become due. Contributions to the Premium Trust will be made solely by the Corporation at its discretion, except that the Corporation must keep sufficient funds in the Premium Trust to discharge the fees of the Trustee of the Premium Trust (Premium Trustee) and other administrative expenses. The Premium Trust will be revocable by the Corporation's Board of Directors at any time before a "Special Circumstance" occurs. After a "Special Circumstance" occurs, the assets of the Premium Trust will be transferred to the Policy Trust and the Premium Trust will be terminated automatically, unless the Corporation is insolvent when the "Special Circumstance" occurs.[2]

In operation, the Premium Trust will serve as a discretionary source of funds for the Corporation to pay premiums on the Group Policy. As the premiums become due under the Group Policy, the Policy Trustee will notify the Corporation and any other person or entity designated by the Corporation. The Corporation may pay group policy premiums directly or may provide a written direction for payments to be made from the Trust. Neither the Policy Trust nor the Premium Trust will include any provision that would require the Trustee of the Premium Trust to automatically pay, or that would permit the Policy Trustee to demand the Premium Trustee to pay premiums on the Group Policy as they become due. The Premium Trust agreement will provide that premium payments will be made from the Trust only at the written direction of the Corporation. The Corporation may provide the necessary direction in one of two ways: it may direct the Trustee of the Premium Trust separately with respect to each premium payment, or it may provide the Trustee of the Premium Trust with a single direction, valid until further notice, to pay each premium as it becomes due.

The Corporation will inform the participants in the Plan that the Corporation has discretion to revoke the Premium Trust, and that the assets of the Trust are available to satisfy the claims of the Corporation's general creditors in the event of the Corporation's insolvency. The Corporation will advise participants that they should not look to the

---

[2] You represent that during any period in which the Corporation is insolvent, and during any period in which the Premium Trustee is determining whether the Corporation is insolvent, the specific trust provisions that apply to the assets of the Premium Trust after a "Special Circumstance" will not be effective. During any such period, the Premium Trust will suspend all premium payments and all transfers of assets otherwise called for by the trust agreement, even if the Premium Trustee has previously received written direction from the Corporation to make such premium payments or asset transfers, and the assets of the Premium Trust will be held and disbursed for the exclusive benefit of the Corporation's general creditors.

assets of the Premium Trust as a source of funding for their benefits under the Plan and that the assets of the Premium Trust will not be used exclusively to pay premiums on the Group Policy.

You request an advisory opinion as to whether: 1) the assets in the Premium Trust will be considered "plan assets" for the purposes of Title I of ERISA; 2) the Corporation's obligation to contribute to the Policy Trust will be deemed a Prohibited Transaction within the meaning of section 406 of Title I of ERISA; and 3) the Corporation's right to recover surplus assets upon termination of the Plan will be a breach of fiduciary duty or a prohibited transaction under ERISA.

With respect to your first question, it is the position of the Department of Labor (the Department) that, in situations outside the scope of the plan assets-plan investments regulation (29 C.F.R. 2510.3-101), the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest. The identification of plan assets would therefore include consideration of any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved.[3]

Plan assets manifestly include any property held in trust on behalf of the plan. The Plan's assets would thus encompass all property held in the Policy Trust established on behalf of the Plan. This would include any contributions to the Policy Trust, any earnings on the contributions, the Group Policy itself, any reserves under the Group Policy, and any retrospective rate credits declared under the Group Policy.

With respect to the Premium Trust, you have represented that unless and until there is a change in control of the Corporation or other "Special Circumstance" that triggers a transfer of Premium Trust assets to the Policy Trust: (i) there will be no representation to any participant or beneficiary that the assets of the Premium Trust will be used only to pay premiums on the Group Policy; (ii) the Corporation will retain all rights of ownership of the Premium Trust assets, which will be available to pay premiums on the Group Policy at the Corporation's direction, or, in the event of the Corporation's insolvency, to pay the claims of the Corporation's general creditors; (iii) neither the Plan nor its participants and beneficiaries will have any preferential claim against or any beneficial interest in the assets of the Premium Trust; (iv) the Corporation will advise participants that they should not look to the assets of the Trust as a source of funding for their benefits under the Plan; (v) the benefits of the Plan will not be limited or governed in any way by the amount of contributions to the Premium Trust; and (vi) no contributions from any participant will be made to the Premium Trust. In addition, you have represented that the Corporation will not treat the assets of the Premium Trust as plan assets under Statement of Financial Accounting Standards No. 106 or otherwise use such assets to offset the Corporation's benefit obligations for purposes of financial reporting.

Based on the facts and circumstances submitted in your request, it is the Department's opinion that if the Corporation establishes and uses the Trust as you have represented, the assets of the Plan would not include the assets of the Premium Trust unless and until a "Special Circumstance" occurs that triggers a transfer of Premium Trust Assets to the Policy Trust.

---

[3] We note in this regard that section 402(b)(1) of ERISA requires that the plan document specify the procedure for establishing and carrying out a funding policy and method. In addition, section 102(b) of ERISA and the regulations thereunder require that the Summary Plan Description describe sources of contributions to the plan and identify any funding medium for the accumulation of assets.

With respect to your second and third questions, the Department expresses no opinion as to whether the proposed arrangements comply with the fiduciary provisions of ERISA.[4] The following discussion is provided for informational purposes only.

Regarding your inquiry whether the Corporation's obligation to contribute to the Policy Trust constitutes a prohibited transaction, the Department notes that while Title I of ERISA does not impose funding requirements or standards on employee welfare benefit plans, there is nothing in ERISA which precludes the establishment and implementation of a separate funding policy. Section 406(a)(1)(B) of ERISA provides that a fiduciary with respect to a plan shall not cause the plan to engage in a transaction if he or she knows or should know that such transaction constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest. The mere existence of a funding policy would not in the Department's view constitute a prohibited extension of credit under section 406(a)(1)(B). However, as the Department explained in Prohibited Transaction Exemption 76-1, 41 Fed. Reg. 12740 (March 26, 1976), if a plan does not make systematic, reasonable and diligent efforts to collect delinquent contributions, or if the failure to collect is the result of an arrangement, agreement, or understanding, express or implied, between the plan and a delinquent contributing employer, such failure to collect a delinquent employer contribution may be deemed to be a prohibited transaction.

Regarding your third question, section 403(c)(1) of ERISA provides in part that, except as provided in subsection (d) of section 403, the assets of a plan shall never inure to the benefit of any employer. Section 403(d)(2) provides that the assets of an employee welfare benefit plan which terminates shall be distributed in accordance with the terms of the plan, except as otherwise provided in regulations of the Secretary of Labor. Although no regulations have been issued under section 403(d)(2), Conference Report No. 93-1280, 93rd Congress, 2d Session, at page 303, states in part that it is intended that the terms of the welfare plan will govern distribution or transfer of assets upon termination of the plan, except to the extent that implementation of the terms of the plan or agreement would unduly impair the accrued benefits of the plan participants.

This letter constitutes an advisory opinion under ERISA Procedure 76-1. Accordingly, this letter is subject to the provisions of that procedure, including section 10 thereof, relating to the effect of advisory opinions.

Sincerely,


ROBERT J. DOYLE
Director of Regulations and Interpretations

---

[4] Pursuant to section 5.04 of ERISA Procedure 76-1, 41 Fed. Reg. 36281 (Aug. 27, 1976), the Department ordinarily will not issue opinions on the form or effect in operation of a plan, fund, or program (or a particular provision or provisions thereof) subject to Title I of ERISA.