IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| KARL FEZER, *et al.*,<br><br>        Plaintiffs,<br>v.<br><br>LOCKHEED MARTIN CORP. and<br>LOCKHEED MARTIN INVESTMENT<br>MANAGEMENT CO.,<br><br>        Defendants. | Case No. 8:25-cv-00908-TDC |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
CLASS ACTION COMPLAINT AND TO STRIKE JURY DEMAND**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT........................................................................................................................ 3

    I.     No "Fourth Circuit Approach" Gives Plaintiffs a Free Pass on Pleading Standards........ 3

    II.    Meaningless Benchmarks Cannot Support a Claim for Underperformance.................... 6

    III.   Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty. ................................ 9

    IV.   Being "Plan Administrator" Does Not Make Lockheed Martin a Fiduciary
          for All Purposes. .............................................................................................................. 10

    V.    Plaintiffs Bear the Burden to Establish that Section 408(c)(2) Does Not Apply........... 11

    VI.   Plaintiffs Fail to State Any Plausible Section 406(a) or (b) Prohibited Transaction
          Claims. ............................................................................................................................. 12

       a.    Routine Reimbursements Cannot Be Stretched Into Section 406(a) Violations............ 13

       b.    Plaintiffs Ignore What Section 406(b) Prohibits. ............................................................ 14

    VII.  Plaintiffs Agree that ERISA Does Not Allow Jury Trials on Their Claims. ................. 15

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases                                                                                                          Page(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 1, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 1

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018) ..................................................................................................... 9

*Carter v. Sentara Healthcare Fiduciary Committee*,
    No. 2:25-cv-16, 2025 WL 2427614 (E.D. Va. Aug. 11, 2025) ............................................ 5, 6

*Chao v. Malkani*,
    452 F.3d 290 (4th Cir. 2006) ................................................................................................. 9

*Coyne & Delany Co. v. Selman*,
    98 F.3d 1457 (4th Cir. 1996) ............................................................................................... 10

*Cunningham v. Cornell University*,
    604 U.S. 693 (2025) ........................................................................................................ 11, 12

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) ................................................................................................. 5

*Enstrom v. SAS Inst.*,
    No. 5:24-cv-105, 2025 WL 685219 (E.D.N.C. Mar. 3, 2025) ............................................ 4, 5

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ...................................................................................................... 1, 4, 5

*Hall v. Cap. One Fin. Corp.*,
    No. 1:22-cv-857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ...................................... 4, 6, 7, 8

*Hanigan v. Bechtel Corp.*,
    No. 1:24-cv-875, 2025 WL 77389 (E.D. Va. Jan. 10, 2025) .................................................. 7

*Hughes v. Northwestern University*,
    595 U.S. 170 (2022) ............................................................................................................ 2, 4

*In re MedStar ERISA Litigation*,
    No. 20-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) .......................................................... 6

*Lauderdale v. NFP Ret., Inc.*,
   No. 8:21-CV-00301, 2024 WL 751005 (C.D. Cal. Feb. 23, 2024) ........................................... 2

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ............................................................................................................. 14

*Matousek v. MidAm. Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) .................................................................................................. 7

*Mills v. Molina Healthcare, Inc.*,
   No. 2:22-CV-01813, 2024 WL 1216711 (C.D. Cal. Mar. 20, 2024) ....................................... 2

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ............................................................................................................ 10

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) .................................................................................................. 4

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) .................................................................................................. 14

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ................................................................................................ 4

*Smith v. CommonSpirit Health*,
   No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023) ..................................................... 4

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ................................................................................................. 4

*Trauernicht v. Genworth Financial Inc.*,
   No. 3:22-CV-532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) .......................................... 8

*Tullgren v. Booz Allen Hamilton, Inc.*,
   No. 1:22-cv-856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ............................................... 6

*Wehner v. Genentech, Inc.*,
   No. 20-cv-6894, 2021 WL 2417098 (N.D. Cal. June 14, 2021) ............................................. 1

Statutes and Regulations

29 U.S.C. § 1106(a)(1)(D) ........................................................................................................ 14

29 U.S.C. § 1132(a)(3) .............................................................................................................. 15

29 C.F.R. § 2550.404a-5(d)(1)(iii) ............................................................................................... 7

**INTRODUCTION**

Plaintiffs urge the Court to evaluate their essential claim—that the Plans' custom LMIMCo-managed TDFs underperformed and carried higher fees—by looking to the "broader context." Opp. 2. But their "context" is either inaccurate or incomplete, and does not "nudge[] their claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (motion to dismiss for failure to state a claim is an "important mechanism for weeding out meritless claims"). Plaintiffs' allegations fail to cross the threshold between possibility and plausibility for at least three reasons.

First, Plaintiffs portray custom TDFs as innately suspect, calling them "highly unusual" or "unorthodox." Opp. at 1, 3. That is false. By the end of 2020, one in four "mega" plans (like the Plans here) offered custom TDFs. *See* Delany Ex. G, Lazard Asset Management, DC Rising, *The Ultimate Upgrade* 2 (June 23, 2021), https://www.lazardassetmanagement.com/docs/122 203/DCRising_TheUltimateUpgrade.pdf. The DOL has expressly encouraged fiduciaries to consider offering custom TDFs, and courts routinely dismiss claims attacking them. *See* Dkt. 36-7 at 4; *see, e.g.*, *Wehner v. Genentech, Inc.*, No. 20-cv-6894, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021), *aff'd*, No. 24-2630, 2025 WL 2505672 (9th Cir. Sept. 2, 2025). Custom TDFs are recognized as superior in many respects to off-the-shelf options like those Plaintiffs invoke because they can be tailored to the unique demographics and behaviors of a plan's participants, and consider varied risk levels and more diversified asset classes. In other words, the fiduciary

1

can customize investment design to fit participant needs. *See, e.g.*, *Mills v. Molina Healthcare, Inc.*, No. 2:22-CV-01813, 2024 WL 1216711, at *4 (C.D. Cal. Mar. 20, 2024), *amended in part*, 2024 WL 4554094 (C.D. Cal. Sept. 17, 2024), *appeal pending*, No. 24-6223 (9th Cir. Oct. 11, 2024); *Lauderdale v. NFP Ret., Inc.*, No. 8:21-CV-00301, 2024 WL 751005, at *4 (C.D. Cal. Feb. 23, 2024) (comparing custom TDFs with "'off-the-shelf' TDFs . . . which assume[] all participants on a particular plan are homogeneous and have the same risk tolerance"). Far from being "unorthodox," custom TDFs reflect exemplary fiduciary engagement and diligence.

Second, Plaintiffs contend that under "Fourth Circuit law," courts do not scrutinize either the magnitude of alleged underperformance or the meaningfulness of the benchmarks Plaintiffs invoke. Opp. at 8. That is also false. Plaintiffs elevate an outlier district court decision to suggest the Fourth Circuit has announced a unique standard that punts any scrutiny of underperformance allegations until after discovery. It has not. The consensus approach, recognized by courts within this Circuit, is that to state a plausible imprudence claim under *Iqbal*, *Twombly*, *Dudenhoeffer*, and *Hughes v. Northwestern University*, 595 U.S. 170 (2022), a plaintiff must allege sustained, material underperformance against meaningful benchmarks. Even the cases Plaintiffs cite for the purported "Fourth Circuit approach" required more than bare allegations of underperformance. In reality, Plaintiffs are advocating no standard at all. Under their view, any allegation of underperformance, no matter how slight and no matter how inapt the comparator, is enough to state a claim for fiduciary breach under ERISA. No court employs that approach, which would eviscerate Plaintiffs' fundamental burden to plead facts that meet the Supreme Court's well-established plausibility standard.

Third, while asking the Court to credit the "context" of their allegations, Plaintiffs consistently misstate the public record, only to then self-servingly declare that correcting their

errors must be deferred to discovery. For example, they recast routine reimbursements of properly incurred expenses—amounting to just 0.10% of the Plans' assets per year—as "loans" or "revenue-generating" services, label Lockheed Martin a fiduciary when it was plainly acting in a settlor capacity in drafting plan documents that designated LMIMCo as the sole fiduciary for all investment decisions, and characterize LMIMCo as a profit center for Lockheed Martin when in reality, LMIMCo has no external clients, only offers the LMIMCo TDFs to the Plans, and does not charge participants any fees for investment services. Courts evaluating a motion to dismiss must accept well-pled facts. *Iqbal*, 556 U.S. at 679. But contrary to Plaintiffs' kick-the-can-down-the-road approach, they cannot base their claims on material misstatements that are flatly contradicted by the very public records on which they rely.

In short, the "context" needed to sustain Plaintiffs' claims is either misleading or missing, and cannot convert implausible allegations into viable claims. Their narrative about custom TDFs misses the mark, their underperformance allegations are cherry-picked and depart from legal consensus, and their fiduciary and reimbursement theories ignore the public record and clear statutory text of ERISA. The Court should therefore dismiss the First Amended Complaint in its entirety, with prejudice.

## **ARGUMENT**

### I.    No "Fourth Circuit Approach" Gives Plaintiffs a Free Pass on Pleading Standards.

As Defendants argued in their Motion to Dismiss, Mot. at 11-12, the First Amended Complaint's fatal flaw is that it alleges only that the LMIMCo TDFs slightly underperformed—by roughly 1 to 2% annually—a handful of other TDFs that are not adequately alleged to be meaningful benchmarks. Rather than contend that this degree of underperformance is material or that their chosen comparators are in fact appropriate, Plaintiffs take the extraordinary position that they need not make those showings at all. According to what Plaintiffs label "the Fourth

Circuit's approach," Opp. at 10, questions about the significance of underperformance or the suitability of benchmarks are factual disputes that cannot be resolved on a motion to dismiss.

Not so. There is no such "Fourth Circuit approach," as Plaintiffs fashion it. As the court in *Hall* observed, "[c]ourts broadly agree on this point": a claim of imprudence cannot "come down to simply pointing to a fund with better performance." *Hall v. Cap. One Fin. Corp.*, No. 1:22-cv-857, 2023 WL 2333304, at *5 (E.D. Va. Mar. 1, 2023) (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022)), *appeal dismissed*, No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023). That is because ERISA focuses on *process*, not results. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 369 (4th Cir. 2014). The question, then, is whether fiduciaries followed a prudent decision-making process under the circumstances then prevailing, not whether hindsight reveals other funds to have performed better. *See Hughes*, 595 U.S. at 177; *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013).

To state a claim, therefore, Plaintiffs must allege facts that either show a flawed process or that plausibly suggest investment decisions outside the "range of reasonable judgments" fiduciaries may make. *Hughes*, 595 U.S. at 177. That is why plaintiffs claiming an investment was imprudently maintained must allege more than mere underperformance against cherry-picked comparators—otherwise, the pleading standard would be eviscerated and courts could not perform the "important task" of "weed[ing] out meritless lawsuits." *Dudenhoeffer*, 573 U.S. at 425. This is not, as Plaintiffs suggest, an unsettled standard that the circuits are still working out. It is the approach mandated by the Supreme Court's plausibility standard, which governs ERISA claims no less than other federal causes of action. *See, e.g.*, *Enstrom v. SAS Inst.*, No. 5:24-cv-105, 2025 WL 685219, at *4 (E.D.N.C. Mar. 3, 2025). Simply put, it is settled law in this Circuit

that "an investment's diminution in value is [not] sufficient[] to demonstrate a violation of a fiduciary's ERISA duties." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007).[1]

Plaintiffs' supposed "Fourth Circuit approach" is drawn largely from *Carter v. Sentara Healthcare Fiduciary Committee*, No. 2:25-cv-16, 2025 WL 2427614 (E.D. Va. Aug. 11, 2025). *Carter* was wrongly decided. The court began by correctly reciting the governing standard articulated in *Dudenhoeffer* and *Hughes* and applied in *Hall*, *Tullgren*, and *Enstrom*. *Id*. at *2. And it recognized that "[m]ultiple courts have found 'alleged underperformance—between one and four percent of a benchmark—fails to state a plausible ERISA claim.'" *Id*. at *5 (quoting *Enstrom*, 2025 WL 685219, at *5). But it then deviated from that standard, treating conclusory allegations that defendants "failed to implement a prudent process for selecting, retaining, or monitoring" plan investments and had "no 'viable, documented process and methodology for monitoring the Plan's investments and expenses'" as sufficient to elevate minimal underperformance into a plausible fiduciary-breach claim. *Id.* at *6. That reasoning is irreconcilable with *Hughes*, which makes clear that investment decisions that slightly underperform some benchmark fall within the "range of reasonable judgments," and with *Iqbal* and *Twombly*, which require more than bare labels to state a claim. If slight underperformance married with generic allegations of a flawed process were enough, courts could ignore the Supreme Court's command to "divide the plausible sheep from the meritless goats." *Dudenhoeffer*, 573 U.S. at 425.

---

[1] Plaintiffs falsely claim that Defendants cited only one case within the Fourth Circuit supporting this view and ignored contrary authority. But Defendants cited *DiFelice* to establish this principle and *Tullgren*, *Enstrom*, and *Hall* as examples of its application. Mot. at 12. It is Plaintiffs who disregard contrary caselaw—they ignore *Tullgren* entirely, and cite *Enstrom* only briefly and *Hall* only to concede it contradicts their position. Opp. at 11, 15.

5

The other cases Plaintiffs invoke only underscore how far *Carter* strayed—and how short Plaintiffs' allegations fall—by demonstrating the kind of additional allegations beyond slight underperformance that courts consistently require to state a claim. In *Moler v. University of Maryland Medical System*, No. 1:21-cv-01824 (D. Md. July 22, 2021), Dkt. 1 ¶ 132, plaintiffs alleged not only significant underperformance of *17 percent*, but also the needless use of expensive share classes and failure to rein in excessive recordkeeping fees. And in *In re MedStar ERISA Litigation*, No. 20-1984, 2021 WL 391701, at *2–4, *6 (D. Md. Feb. 4, 2021), plaintiffs alleged underperformance paired with persistent losses after a controversial strategy shift, significant negative financial press, and billions in outflows over four years. In other words, the plaintiffs in these cases alleged circumstances supporting an inference of imprudence beyond investment results alone. These kinds of fact-intensive allegations are a far cry from the conclusory "no process" assertions credited in *Carter*, and they align with the consensus view that underperformance alone is insufficient to state a claim for imprudence. They are also entirely missing from Plaintiffs' First Amended Complaint, which alleged *nothing whatsoever* about Defendants' investment decision-making process.

## II. Meaningless Benchmarks Cannot Support a Claim for Underperformance.

As Defendants explained, neither the Comparator TDFs nor the S&P Target Date Index qualifies as a meaningful benchmark for the LMIMCo TDFs, and Plaintiffs do not seriously contest the point. Instead, they attempt to sidestep it by arguing that the suitability of their benchmarks is a factual dispute inappropriate for resolution on a motion to dismiss. Opp. 14–15. That position ignores that courts in this Circuit routinely dismiss nearly identical claims for failure to plead a meaningful benchmark. *See Hall*, 2023 WL 2333304, at *6; *Tullgren v. Booz Allen Hamilton, Inc.*, No. 1:22-cv-856, 2023 WL 2307615, at *6 (E.D. Va. Mar. 1, 2023), *appeal*

6

*dismissed,* No. 23-1366, 2023 WL 6458653 (4th Cir. May 12, 2023); *Hanigan v. Bechtel Corp.*, No. 1:24-cv-875, 2025 WL 77389, at *2 (E.D. Va. Jan. 10, 2025).

On the Comparator TDFs, Plaintiffs recycle the same conclusory allegations from the FAC—asserting that these funds, like the LMIMCo TDFs, use active management, are "through retirement" funds, and "seek an optimal mix of investments." Opp. at 14 (citing FAC ¶ 92). Plaintiffs are silent about the asset allocation, level of diversification, risk profile, or investment strategy of the Comparator TDFs—key determinants of investment performance that are the very hallmarks of meaningful benchmark analysis. *See Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022); *Hall*, 2023 WL 2333304, at *6. Plaintiffs compound this pleading failure by aggregating the individual Comparator TDFs into a synthetic "benchmark" that does not exist and cannot be invested in. FAC ¶ 94. ERISA requires real, verifiable benchmarks, not invented averages. *See Matousek*, 51 F.4th at 281. Plaintiffs' fabricated composite manufactures, rather than reveals, significant underperformance.

Plaintiffs have no response to the authorities—including *Hall* and *Tullgren*—holding that the S&P Target Date Index is not a meaningful benchmark because it is an *uninvestable* blend of disparate strategies and styles. *See* Mot. at 18. Instead, they double down on the index's appearance in participant disclosures, asserting that "Defendants themselves held [the S&P Target Date Index] out to plan participants as the appropriate benchmark." Opp. 14. But as Defendants already explained, DOL regulations require every plan to identify a broad market index so participants can compare the plan's designated investment alternatives. *See* 29 C.F.R. § 2550.404a-5(d)(1)(iii). The index appears in the Plans' disclosures for that reason alone— regulatory compliance—not because it was adopted as a performance benchmark. Indeed, the DOL itself has acknowledged that this disclosure rule "does not adequately address increasingly

7

popular investments like target date funds that include a mix of asset classes," which is why Congress directed the agency to permit blended indices that better reflect TDF strategies. SECURE 2.0 Act of 2022 § 318. *Trauernicht v. Genworth Financial Inc.*, No. 3:22-CV-532, 2023 WL 5961651, at *13 (E.D. Va. Sept. 13, 2023), illustrates Plaintiffs' failure: there, the court emphasized that the complaint alleged that the plan's investment policy statement expressly adopted the S&P Target Date Index "to measure the performance" of the challenged TDFs. *Id.* at *11. That additional allegation is missing here, just as it was in *Hall* and *Tullgren*, where the index, as here, appeared only in participant disclosures to satisfy DOL regulations.

Plaintiffs' claim that the LMIMCo TDFs not only underperformed but were overpriced similarly fails for lack of a meaningful benchmark. Plaintiffs attempt to sidestep the issue altogether with the erroneous contention that Defendants "do not appear to take issue" with the sufficiency of their excessive-fee allegations. Opp. at 12. This is false. Defendants expressly argued that Plaintiffs' fee claim rests entirely on an inapt comparison of the LMIMCo TDFs, which are actively managed, to the Vanguard TDFs, which are passively managed. *See* Mot. at 18-20. Plaintiffs do not genuinely engage with this argument, saying that it should be saved for summary judgment. Opp. at 15. It is therefore conceded. Plaintiffs also ignore—and therefore concede—Defendants' argument that, regardless of whether the Vanguard TDFs are a meaningful benchmark, the Court cannot infer imprudence from allegations that a *single* fund charged lower fees than the LMIMCo TDFs. *See* Mot. at 20 n.9.

In short, Plaintiffs have not plausibly alleged any meaningful benchmark for evaluating the LMIMCo TDFs' performance or expenses, and their prudence claims fail for that reason alone.

**III.     Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty.**

As Defendants argued, Plaintiffs' disloyalty claim fails because it rests on factually and legally deficient allegations—namely, that Defendants were motivated by "millions of dollars" paid from Plan assets to retain the LMIMCo TDFs despite alleged underperformance. That theory collapses because Plaintiffs both wildly exaggerated the amounts at issue and mischaracterized the payments themselves. Plaintiffs first claimed $160 million in reimbursements, later reducing the figure to $20 million after correcting their citation to the wrong plans, and even then overstating the total by sweeping in all plans and investments rather than focusing on *just* the LMIMCo TDFs offered *just* to the Plans. And the payments were not profits or fees at all, but reimbursements for LMIMCo's direct expenses—precisely the type of ERISA-authorized expenditures permitted under governing law. *See, e.g.*, *Chao v. Malkani*, 452 F.3d 290, 296 (4th Cir. 2006) ("A defendant of course does not breach any fiduciary duties if it makes a reasonable request for reimbursement pursuant to this provision.").

Plaintiffs dismiss these points as "factual disputes." Opp. at 17. But to state a loyalty claim, they must plausibly allege that Defendants' "operative motive was to further [their] own interests." *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018). Yet Plaintiffs ask the Court to ignore the context that reveals their allegations to be implausible. LMIMCo's reimbursements were *de minimis*, expressly permitted by ERISA, and fully consistent with DOL guidance encouraging fiduciaries to create custom TDFs and designate them as the Plans' default investment option. If reimbursing an investment manager's direct expenses in this context constituted disloyalty, then every plan sponsor that advances expenses on behalf of a plan and later seeks ERISA-authorized reimbursement would be presumptively disloyal—an absurd result that the statute does not compel.

## IV. Being "Plan Administrator" Does Not Make Lockheed Martin a Fiduciary for All Purposes.

Even if Plaintiffs have made out any claims for breach of fiduciary duty, those claims fail as to Lockheed Martin because it was not a fiduciary for the conduct at issue. Plaintiffs insist that Lockheed Martin is a proper defendant because it is the "Plan Administrator" and, therefore, a fiduciary. Opp. at 18. But fiduciary status under ERISA is not an all-or-nothing proposition—the question is always whether the entity was acting as a fiduciary *in the context of the conduct being challenged*, not whether it may have served as a fiduciary for some other purpose. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000). Plan documents confirm that Lockheed Martin acted as a settlor in appointing and retaining LMIMCo as the Plans' sole investment fiduciary but itself had no *fiduciary* authority to select or remove the Plans' investments. In that context, Lockheed Martin was not acting as a fiduciary with respect to the conduct Plaintiffs challenge.

Plaintiffs' reliance on *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996), only underscores the flaw in their argument. In *Coyne*, the Fourth Circuit held that a plan sponsor, though acting in its settlor capacity when it appointed a fiduciary, nevertheless had standing as a fiduciary when it later sued that appointee. *Id.* at 1466. As the court explained, the sponsor's very act of bringing the lawsuit was itself an exercise of a fiduciary function. *Id*. But those circumstances are absent here. In naming LMIMCo as the sole investment fiduciary, the Plan documents reflect a plan governance design that Lockheed Martin adopted as settlor, and Lockheed Martin has taken no action as a litigant or otherwise beyond this capacity. Plaintiffs are impermissibly seeking to impose fiduciary liability for actions taken as settlor, and the fiduciary breach claims must therefore be dismissed against Lockheed Martin.

That same flaw carries over to Count II against LMIMCo. Plaintiffs concede that LMIMCo cannot be liable as a co-fiduciary for its own appointment. Opp. at 21. Yet they recast

the claim to argue that LMIMCo is somehow liable for Lockheed Martin's ongoing decision to retain it as investment manager. *Id*. at 21–22. But LMIMCo's continued retention is not a fiduciary act at all—it flows from the same settlor act that resulted in LMIMCo's appointment in the first place. Plaintiffs cannot convert that non-fiduciary retention into a fiduciary breach.[2]

Plaintiffs warn that, without co-fiduciary liability here, ERISA fiduciaries could evade accountability by burying their heads in the sand and leaving participants "at sea." Opp. at 22. But that is not so. Nothing in Defendants' position insulates LMIMCo from liability for its *own* fiduciary acts. If Plaintiffs plausibly alleged that LMIMCo mismanaged plan assets or otherwise breached its duties as investment manager—and, to be clear, they have not—LMIMCo would face *direct* liability under ERISA. What ERISA does not allow Plaintiffs to do is repackage Lockheed Martin's settlor decision to appoint or retain LMIMCo as a co-fiduciary breach by LMIMCo itself. In other words, section 405 does not collapse direct fiduciary liability into co-fiduciary liability. Because Plaintiffs have pleaded no facts supporting a direct breach by LMIMCo, Count II must be dismissed.

## V.      Plaintiffs Bear the Burden to Establish that Section 408(c)(2) Does Not Apply.

As Defendants explained, all of Plaintiffs' prohibited transaction claims fail because the payments to LMIMCo fall squarely within section 408(c)(2), which permits fiduciaries to receive reasonable compensation or reimbursement of expenses properly and actually incurred. Plaintiffs respond that, under *Cunningham v. Cornell University*, 604 U.S. 693 (2025), section 408(c)(2) is an affirmative defense they need not negate.

---

[2] Plaintiffs argue that LMIMCo had "a fiduciary obligation at the time it improperly retained the plan manager after its appointment." Opp. at 22. But LMIMCo *was* the Plans' investment manager—it did not appoint or retain itself. Its fiduciary obligations arose only with respect to managing plan investments, not with respect to Lockheed Martin's settlor decision to keep it in that role.

Plaintiffs misread *Cunningham* in claiming they need not address section 408(c)(2). The Supreme Court's analysis in *Cunningham* was directed entirely at the "21 exemptions enumerated in § [408]"—that is, the exemptions in section 408(b), expressly titled "Transactions *exempted* from section [406] prohibitions." *Cunningham*, 604 U.S. at 705 (emphasis added). The Supreme Court explained that when a statute sets out prohibitions and then enumerates exemptions "apart from the prohibitions" that expressly refer back to them, those exemptions function as affirmative defenses. That is how ERISA is structured: section 406(a) sets out per se prohibitions, and the exemptions are separately "enumerated" in section 408(b), which confirms that the substantive prohibitions are "provided in section [406]." *Cunningham*, 604 U.S. at 694–95. The Supreme Court's references to "21 enumerated exemptions" and prohibitions "provided in section [406]" all point to section 408(b).

Section 408(c), by contrast, is separately titled "Fiduciary benefits and compensation *not prohibited* by section [406]," and identifies three categories of conduct—such as reimbursements of properly incurred expenses—that Congress excluded from section 406's prohibitory scope in the first instance. In other words, section 408(c)(2) is not among the exemptions *Cunningham* was focused on; it defines conduct that is not prohibited at all. Plaintiffs therefore bear the burden to plausibly allege that the reimbursements here fall outside section 408(c)(2). They have not done so, and their prohibited-transaction claims fail for that reason alone.

## VI. Plaintiffs Fail to State Any Plausible Section 406(a) or (b) Prohibited Transaction Claims.

Even if Plaintiffs were correct that they need not plead around § 408(c)(2), their prohibited transaction claims still fail on their own terms. Plaintiffs' allegations do not state a violation of section 406(a) or section 406(b), both of which independently require more than the routine, ERISA-authorized reimbursements at issue here.

### a. Routine Reimbursements Cannot Be Stretched Into Section 406(a) Violations.

Plaintiffs' prohibited transaction claims under Sections 406(a)(1)(B), (C), and (D) all fail for the same reason: Plaintiffs identify no "transaction" of the type those provisions target. First, section 406(a)(1)(B) targets extensions of credit between a plan and a party in interest. Plaintiffs contend they need not allege a debtor-creditor relationship to make out a claim under section 406(a)(1)(B) because it is sufficient that the Plans "owed" LMIMCo "millions of dollars." Opp. 23–24. But the Forms 5500 reflect only post-service reimbursements for LMIMCo's direct expenses, not loans of plan assets. That cannot be enough: adopting Plaintiffs' invitation to treat reimbursements as "loans" would lead to the illogical result of converting every routine expense repayment into a prohibited extension of credit—contrary to section 408(c)(2)'s express allowance for the reimbursement of expenses incurred by fiduciaries in the performance of plan duties.

Second, section 406(a)(1)(C) targets transactions in which a fiduciary causes services to be furnished between a plan and party in interest. Plaintiffs argue that merely alleging LMIMCo provided services to the Plans is enough. Opp. 24–25. But LMIMCo provided those services pursuant to the governing Plan documents, which obligated it to act as the Plans' investment fiduciary. Plaintiffs identify no separate "transaction" that caused LMIMCo to furnish these services to the Plans. Treating a fiduciary's routine performance of its duties under plan documents as a prohibited "transaction" would mean every fiduciary automatically violates Section 406(a)(1)(C) simply by carrying out its responsibilities—an outcome ERISA does not contemplate. *See* Mot. 26–27.

Third, section 406(a)(1)(D) targets transfers intended to benefit a party in interest at the plan's expense. Plaintiffs argue that section 406(a)(1)(D) is satisfied by their allegation that LMIMCo was reimbursed with plan assets. Opp. at 25. But that subsection requires more than

the bare fact of a transfer: it demands facts showing the fiduciary acted with the *intent* to benefit a party in interest at the plan's expense. 29 U.S.C. § 1106(a)(1)(D); *Lockheed Corp. v. Spink*, 517 U.S. 882, 892–93 (1996). Plaintiffs allege no such intent, nor do they claim the reimbursements were excessive or unauthorized. Such payments fall within section 408(c)(2)'s allowance for reasonable compensation and do not state a prohibited-transaction claim.

Because Plaintiffs identify no loan, no provision of services inconsistent with Plan documents, and no transfer intended to benefit a party in interest at the Plans' expense, their Section 406(a) claims must be dismissed.

**b. Plaintiffs Ignore What Section 406(b) Prohibits.**

Plaintiffs' only response to Defendants' arguments why their Section 406(b) claims fail is to insist that subsections (b)(2) and (b)(3) do not require the involvement of a "third party." Opp. at 25. But that framing sidesteps what the statute actually prohibits.

Section 406(b)(2) bars a fiduciary from "acting in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan." *Reich v. Compton*, 57 F.3d 270, 287–88 (3d Cir. 1995). The "critical element" of such a claim, *id*., is action on behalf of an adverse third party. Plaintiffs do not allege that here. Instead, they allege that in being reimbursed for services to the Plans, LMIMCo acted in its *own* interest. At most, that allegation falls under section 406(b)(1)—and even then, it fails, because the payments were routine reimbursements expressly permitted by section 408(c)(2). *See* Mot. 28–29.

Likewise, section 406(b)(3) prohibits a fiduciary from receiving consideration from a party "dealing with the plan." Plaintiffs do not allege LMIMCo was compensated by any third party. They allege only that the Plans themselves reimbursed LMIMCo—precisely the sort of payment Section 408(c)(2) authorizes, not the type of conflicted transaction Section 406(b)(3) addresses.

**VII.  Plaintiffs Agree that ERISA Does Not Allow Jury Trials on Their Claims.**

Defendants explained in their Motion that this Court should follow the overwhelming majority of courts—including those in this Circuit—and strike Plaintiffs' jury demand because they seek equitable relief for which no jury trial is available. *See* Mot. 29–30. Plaintiffs concede as much, acknowledging that "a number of courts have found claims under ERISA, and particularly claims brought pursuant to 29 U.S.C. § 1132(a)(3), equitable in nature." Opp. 30. With both sides agreeing on the weight of authority, the Court should strike Plaintiffs' jury demand.

## CONCLUSION

In sum, Plaintiffs plead no facts supporting a plausible fiduciary-breach or prohibited-transaction claim. At most, they allege the LMIMCo TDFs slightly underperformed cherry-picked comparators over limited periods—allegations that fall short of the governing standard. Likewise, publicly available documents show that LMIMCo received only reimbursements for its direct expenses, precisely the type of compensation ERISA permits, not the self-enrichment scheme Plaintiffs imagine. Plaintiffs thus repackage ordinary fiduciary conduct as wrongdoing, which is insufficient. The First Amended Complaint should be dismissed with prejudice.

Dated:  October 28, 2025

Respectfully submitted,

By:  */s/ William J. Delany*
William J. Delany (*pro hac vice*)
Ross P. McSweeney (*pro hac vice*)
Richard A. Smith Jr., Bar No. 30313
Chidera Onyeoziri (*pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 861-5412
Fax: (202) 659-4503
wdelany@groom.com

rmcsweeney@groom.com
rsmithjr@groom.com
conyeoziri@groom.com

**ATTORNEYS FOR DEFENDANTS**