UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KARL FEZER,
VU-TIMOTHY NGUYEN,
JOHN HOLMES,
STEVEN KAY,
STEWART SIMON MILLION-PEREZ
and
DANIEL ESCAMILLA,
*individually, and as representatives of a class
of participants in and beneficiaries of the
Lockheed Martin Corporation Salaried
Savings Plan, the Lockheed Martin
Corporation Performance Sharing Plan for
Bargaining Employees, and the Lockheed
Martin Corporation Capital Accumulation
Plan, and derivatively for those Plans,*

      Plaintiffs,

      v.

LOCKHEED MARTIN CORPORATION
and
LOCKHEED MARTIN INVESTMENT
MANAGEMENT COMPANY,

      Defendants.

Civil Action No. 25-0908-TDC

**MEMORANDUM OPINION**

Plaintiffs Karl Fezer, Vu-Timothy Nguyen, John Holmes, Steven Kay, Stewart Simon Million-Perez, and Daniel Escamilla have filed this putative class action against their employer, Defendant Lockheed Martin Corporation ("Lockheed"), and its subsidiary, Defendant Lockheed Martin Investment Management Company ("LMIMCo"), in which they allege various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1193c, in relation to three employer-sponsored retirement plans. Defendants have filed a Motion to

Dismiss the First Amended Class Action Complaint, which is fully briefed. A hearing on the Motion was held on March 27, 2026. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The operative Amended Complaint alleges the following relevant facts, which are accepted as true for purposes of resolving the Motion.

### I.    The ERISA Retirement Plans

Lockheed Martin Corporation, a defense contractor with more than 120,000 employees in the United States, sponsors several retirement plans for its employees governed by ERISA, including certain defined-contribution plans established pursuant to 26 U.S.C. § 401(k) ("401(k) plans") that hold private investment funds created and managed in-house by its subsidiary, LMIMCo. The allegations in this case relate to three such retirement plans, the Lockheed Martin Corporation Salaried Savings Plan ("the Salaried Plan"), the Lockheed Martin Corporation Performance Sharing Plan for Bargaining Employees ("the Bargaining Plan"), and the Lockheed Martin Corporation Capital Accumulation Plan ("the Capital Plan") (collectively, "the Plans"). The Plans include "substantially all the employer-sponsored retirement savings for tens of thousands of Lockheed employees." Am. Compl. ¶ 11, ECF No. 35. For each of the Plans, Lockheed is the Plan Sponsor and Plan Administrator, and LMIMCo is the Plan Manager. The assets of the Plans are "managed on a commingled basis through the Lockheed Martin Corporation Defined Contribution Plans Master Trust" ("the Master Trust"). *Id.* ¶ 34.

As the Plan Sponsor and Plan Administrator, Lockheed "had the authority and responsibility for the design of the Plans, including the right to amend the plan and trust agreements, to replace LMIMCo" as the Plan Manager, "to replace third-party service providers,"

and to exercise "a wide range of discretion over 'rules, fees, and procedures.'" *Id.* ¶ 32. As the Plan Manager, LMIMCo "had primary responsibility for the day-to-day discretionary management of the Plans' investments." *Id.* ¶ 33. According to the Amended Complaint, "the plan documents purported to vest LMIMCo with sole discretion over investment choices," but "Lockheed retained the ability to make determinations related to service providers (including investment managers), to replace LMIMCo, and to instruct LMIMCo, given Lockheed's status as LMIMCo's sole owner, sole client, and the sponsor and administrator of the Plans." *Id.* Due to their respective roles, Lockheed and LMIMCo were each a "Named Fiduciary" in relation to the Plans. *Id.* ¶¶ 32–33.

Plaintiffs' claims relate to certain funds offered as investment options within the Plans, specifically, target date funds ("TDFs") managed by LMIMCo ("the LMIMCo TDFs"). In general, TDFs "purport to provide a one-stop diversified fund with a stated 'target' retirement date, which is generally a year stated in the fund's name," and they "automatically rebalance" by "invest[ing] increasingly in low-risk assets, like bonds, and decreasingly in high-risk assets, like stocks, as its stated target retirement date approaches." *Id.* ¶ 4. According to the Amended Complaint, the LMIMCo TDFs are "'through retirement' funds" in that they "continue on [their] glidepath for the 15-year period following the target retirement year," which "makes the funds more aggressive . . . relative to otherwise comparable 'to retirement' funds that reach their most conservative allocation around a participant's target retirement date." *Id.* ¶ 77.

As of 2023, the LMIMCo TDFs comprised 13 of the 22 funds in which plan participants could invest. Defendants "marketed" the LMIMCo TDFs "to participants in and beneficiaries of the Plans in a range of materials that made the funds sound like the only investment employees needed for retirement." *Id.* ¶ 14. For instance, Defendants "pitched" the LMIMCo TDFs "as beneficial because they left 'most ongoing investment decisions to investment professionals,'

ensuring . . .'a fully-diversified portfolio managed by an experienced portfolio management team,' and providing a 'simple and effective way to invest.'" *Id.* ¶ 80. Defendants also designated the LMIMCo TDFs as "default funds" for plan participants, in that they allocated to the LMIMCo TDFs the retirement savings of employees who did not make their own investment elections or whose previous elections were removed as investment options. *Id.* ¶ 14.

Defendants did not provide detailed online prospectuses for the LMIMCo TDFs to plan participants and instead "regularly directed employees to a statement provided by Morningstar, which explained that the funds aimed 'to provide investors with an optimal level of return and risk, based solely on the target date.'" *Id.* ¶ 81. Defendants also informed plan participants that the "benchmarks for the LMIMCo Target-Date Funds are the corresponding S&P Target Date Indices" ("S&P Indices") because the S&P Indices are "industry-standard representatives for target-date funds and glidepath management." *Id.* ¶ 85.

## II.    Plan Performance

Plaintiffs allege that Defendants "in fact knew" that the LMIMCo TDFs "were chronic underperformers." *Id.* ¶ 83. Specifically, they assert that "for every [LMIMCo TDF] that has been available for at least six years, the S&P Target Date Index with the same target date has a long history of outperforming the comparable [LMIMCo TDF]," and this "chronic pattern of underperformance was readily apparent by at least 2019." *Id.* ¶ 85.

In the Amended Complaint, Plaintiffs provide various data tables and graphs, referred to as "figures," to illustrate the alleged underperformance of the LMIMCo TDFs. *Id.* ¶¶ 91–95. Figure 1 charts the LMIMCo TDFs' performance relative to the S&P Indices in terms of annualized 10-year returns as of the end of 2024 and shows that the LMIMCo TDFs underperformed the S&P Indices at rates ranging from 0.34% per year (for TDFs targeting 2020)

to 1.09% per year (for TDFs targeting 2055), for a total loss over 10 years of 3.5% to 11.5%. Figure 2 compares the annualized 10-year net returns, as of December 2024, for the LMIMCo TDFs to those of three allegedly comparable professionally managed TDFs offered by Capital Group, Fidelity, and T. Rowe Price. Each of those TDFs, like the LMIMCo TDFs, "incorporates active management, has a through retirement glidepath, and seeks to invest in an optimal mix of investments for investors aiming to retire around the stated vintage year." *Id.* ¶ 92. Figure 2 shows that the LMIMCo TDFs' annualized net returns were lower than those of the comparator TDFs by 0.46% per year to 1.95% per year. Figures 3 and 4 chart the trailing three-year returns of the LMIMCo TDFs from 2017 to 2020 in relation to, respectively, the S&P Indices and the average returns of the Capital Group, Fidelity, and T. Rowe Price TDFs and show that all of the LMIMCo TDFs underperformed the S&P Indices by 0.19% to 7.14% and the average of the three comparator funds by 2.87% to 7.16% for each of the four years tracked, with the exception of the LMIMCo TDFs targeting 2040 and 2045, whose trailing three-year returns exceeded those of the S&P Indices in 2020 only.

### III.    Management Fees

The Amended Complaint also provides in Figure 5 a chart of LMIMCo TDFs' expense ratios, which measure the fees charged to manage and operate the fund as a percentage of the fund's assets, as compared to the expense ratios for TDFs offered by Vanguard, which was "the largest provider of TDFs during the relevant period" and whose "funds are widely considered a TDF market leader." *Id.* ¶ 98. Figure 5 shows that over a 10-year period, Vanguard TDFs "had both lower fees and superior performance" as compared to the LMIMCo TDFs in that the Vanguard TDFs each outperformed the LMIMCo TDF with the same target year while maintaining an expense ratio of 0.08%, as opposed to the LMIMCo TDFs' expense ratios, which ranged from

0.20% to 0.48%. *Id.* ¶¶ 98, 100. The Amended Complaint also alleges that the Plans offered several generic index funds with expense ratios ranging from 0.04% to 0.07%. At the same time, the Amended Complaint asserts that although "some actively managed TDFs had higher fees than the [LMIMCo TDFs], those independently managed TDFs generally offered a track record of superior investment performance to compensate for the fees they charged." *Id.* ¶ 100.

According to Plaintiffs, all of this data shows that the LMIMCo TDFs' poor performance "must have been readily apparent to Defendants by 2019." *Id.* ¶ 95. They further allege that since then, from 2019 to 2025, the LMIMCo TDFs' "poor performance and high costs [have] resulted in hundreds of millions in lost investment returns" for plan participants and beneficiaries. *Id.* ¶ 97. According to the Amended Complaint, despite the underperformance, Defendants failed "to seriously and objectively consider removing LMIMCo as the Plan Manager, eliminating the [LMIMCo] TDFs as investment options, and selecting from among the readily available superior TDFs, as a prudent fiduciary would have." *Id.* ¶ 90.

The Amended Complaint further alleges that "Lockheed had long known that LMIMCo's management was deficient," including because Lockheed was sued over LMIMCo's selection of funds in 2006, and, in 2015, Lockheed settled claims relating to the management of its retirement plans by LMIMCo for $62 million. *Id.* ¶¶ 108–109. Moreover, in January 2019, Defendants initiated a review of the funds selected for the Plans but "took no significant action for more than two years" until 2021, when they "attempted to adjust the glide path that allocated retirees' balances in the [LMIMCo TDFs] to make those funds more competitive," an effort that "failed to achieve the desired improvement." *Id.* ¶¶ 105–106. Rather, after 2019, Defendants added two new LMIMCo TDFs as investment options.

From 2019 onward, Defendants "paid themselves" more than $20 million from the Master Trust that holds the Plans' assets to cover their expenses and executive compensation. *Id.* ¶ 114. In their Internal Revenue Service ("IRS") Forms 5500, which must be filed annually in relation to ERISA benefit plans, Defendants reported that an entity known as "Lockheed Martin Corporation LMIMCo" charged the Plans certain "other fees." *Id.* According to Defendants, "Lockheed Martin Corporation/LMIMCo" is a "combined designation, used for reporting purposes" to refer to both Lockheed and LMIMCo. Notice at 1, ECF No. 46. In addition, according to the Amended Complaint, Defendants paid themselves "indirect compensation" from the Master Trust and received $160 million in "direct payments" from a separate trust that held assets for Defendants' defined-benefit pension plans. Am. Compl. ¶ 115. Plaintiffs allege that LMIMCo used the fees charged to plan participants to pursue "private equity investments and the use of comparably expensive managers that provided little, if any, benefit to Plaintiffs." *Id.* ¶ 118. They also "had an incentive to increase the fees associated with the Plans, because much of that money flowed to LMIMCo and could be allocated by Defendants towards in-house expenses or favored counterparties." *Id.* ¶ 111. According to the Amended Complaint, Defendants used "opaque language" in communications with plan participants which "had the effect of concealing the fees Defendants were paying themselves." *Id.* ¶ 113.

Finally, in Lockheed's 2023 IRS Form 5500 for the Salaried Plan, filed on July 24, 2024, Lockheed reported that "[t]he Master Trust owed the Corporation"—that is, Lockheed—"$5.8 million and $6.0 million" as of December 31, 2023 and December 31, 2022, respectively, "for certain expenses paid by the Corporation in providing services to the [Salaried Plan] and certain other plans." *Id.* ¶ 116. The 2022 IRS Form 5500 for the Salaried Plan "similarly disclosed that the commingled Master Trust owed the Corporation $5.9 million as of December 31, 2021." *Id.*

## IV.    The Complaint

Plaintiffs filed the original Complaint in this case on March 19, 2025. In the operative Amended Complaint, Plaintiffs allege five claims against Defendants in the following numbered counts: (1) breach of fiduciary duty, specifically of the duties of prudence and loyalty, in violation of 29 U.S.C. § 1104(a), based on the selection and retention of the LMIMCo TDFs as Plan investments; (2) breach of fiduciary duty, specifically of the duties of prudence and loyalty, in violation of 29 U.S.C. § 1104(a), based on the selection of, failure to monitor, and retention of LMIMCo as Plan Manager; (3) breach of fiduciary duty, specifically of the duties of prudence and loyalty, in violation of 29 U.S.C. § 1104(a), based on unreasonable management fees; (4) prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. § 1106(a)(1); and (5) prohibited transactions between a plan and a fiduciary, in violation of 29 U.S.C. § 1106(b).

## DISCUSSION

Defendants seek dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable

to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, Defendants have attached several exhibits to their Motion, including the plan documents for the three retirement plans relevant to this case. Where the Amended Complaint expressly references these documents and Plaintiffs do not challenge their authenticity, the Court finds that they are integral to the Amended Complaint and may be considered in resolving the Motion.

## II.    Fiduciary Duty Claims

ERISA imposes personal liability upon "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" in the statute. 29 U.S.C. § 1109(a). ERISA codifies the fiduciary duty of prudence by providing that "a fiduciary shall discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B); *see DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 417 (4th Cir. 2007). It also codifies the fiduciary duty of loyalty by providing that "a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and

beneficiaries." 29 U.S.C. § 1104(a)(1); *see DiFelice*, 497 F.3d at 417–18. To state a claim for a breach of a fiduciary duty under ERISA, "a plaintiff need only 'plausibly allege that a fiduciary breached [a duty], causing a loss to the employee benefit plan.'" *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 468 (4th Cir. 2020) (quoting *Schweitzer v. Inv. Comm. of the Phillips 66 Sav. Plan*, 960 F.3d 190, 195 (5th Cir. 2020)).

Defendants seek dismissal of Counts 1, 2, and 3 ("the fiduciary duty claims") against Lockheed because, they assert, Lockheed is not a fiduciary with respect to the conduct at issue in those claims, and they seek dismissal of Count 2 against LMIMCo on the ground that it cannot be held liable as a fiduciary with respect to its own appointment. They also seek dismissal of the fiduciary duty claims against both Defendants on the grounds that the Amended Complaint fails to state plausible claims for breaches of the fiduciary duties of prudence and loyalty.

### A.    Fiduciary Status

Defendants first argue that Lockheed, the Plan Sponsor, is not a fiduciary with respect to any of the conduct alleged in the fiduciary duty claims because it acted only as a settlor with respect to the appointment of LMIMCo and because it "had no fiduciary role in selecting, monitoring, or removing investment options." Mot. Dismiss at 8, ECF No. 36-1. As relevant here, ERISA provides that "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). For purposes of an ERISA fiduciary duty claim, a person is a fiduciary "only as to the activities which bring the person within [this] definition." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992).

10

In *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit stated that "a plan sponsor does not become a fiduciary by performing settlor-type functions such as establishing a plan and designing its benefits." *Id.* at 1465. Lockheed thus did not have responsibility as a fiduciary for all of LMIMCo's conduct as the Plan Manager merely because it appointed LMIMCo to that role. However, the Fourth Circuit further concluded in *Coyne & Delany* that "a plan sponsor does become a fiduciary under the [ERISA] definition *if* (that is, 'to the extent') it retains or exercises 'any discretionary authority' over the management or administration of a plan." *Id.* (quoting 29 U.S.C. § 1002(21)(A)). Such discretionary authority can consist of "the power (through plan amendment) to appoint, retain and remove plan fiduciaries." *Id.* at 1465. In light of such authority, a plan sponsor has a "fiduciary responsibility to monitor the performance of its appointees" in their management of the plan. *Id.* at 1466. The court thus concluded that because Coyne & Delany Company, the plan sponsor, retained the power to amend the plan at any time, which permitted it to appoint, retain, and remove the plan administrator, it was a fiduciary for purposes of its discretionary responsibility "to monitor appropriately" and "remove" the plan administrator when warranted. *Id.*

Here, the plan documents for each of the Plans state that Lockheed, as the Plan Administrator, is a "Named Fiduciary of the Plan," and as the Plan Sponsor, has "the authority and responsibility for . . . the design of the Plan . . . , including the right to amend the Plan." Salaried Plan at 106, 108, Mot. Dismiss Ex. B, ECF No. 36-4; Bargaining Plan at 74–75, Mot. Dismiss Ex. C, ECF No. 36-5; Capital Plan at 45–46, Mot. Dismiss Ex. D, ECF No. 36-6. Where the Amended Complaint alleges that Lockheed thus retains the power to replace LMIMCo as the Plan Manager, and Defendants have pointed to no provisions of the plan documents that contradict that assertion, the Court finds that Lockheed was acting as a fiduciary with respect to the conduct alleged in

11

Count 2, which is based on the selection of, failure to monitor, and retention of LMIMCo as the Plan Manager. *See Coyne & Delany Co.*, 98 F.3d at 1465–66.

As for Counts 1 and 3, Plaintiffs' claims against Lockheed in these counts are that Lockheed is liable as a co-fiduciary to LMIMCo pursuant to 29 U.S.C. § 1105(a), under which "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan," including if a failure to comply with fiduciary duties "has enabled such other fiduciary to commit a breach." 29 U.S.C. § 1105(a)(2). Where Plaintiffs have sufficiently alleged that Lockheed was a fiduciary, and Defendants do not contest LMIMCo's fiduciary status as to the conduct alleged in Counts 1 and 3, the Court will not dismiss the claims in those counts against Lockheed based on a lack of fiduciary status.

For the same reasons, to the extent that Defendants argue that LMIMCo cannot be held liable under Count 2 for a breach of fiduciary duty with respect to its own appointment as Plan Manager, the Court finds that Plaintiffs, by sufficiently alleging that both Lockheed and LMIMCo are fiduciaries, have plausibly alleged that LMIMCo can be held liable under Count 2 as a co-fiduciary pursuant to 29 U.S.C. § 1105(a). The Court therefore will not dismiss Count 2 as to LMIMCo on this basis.

### B.    Duty of Prudence

#### 1.    Count 1: LMIMCo TDFs

Defendants seek dismissal of Count 1, which alleges a breach of the fiduciary duty of prudence based on LMIMCo's selection and maintenance of the LMIMCo TDFs as investment options for the Plans despite their underperformance relative to other funds. As relevant to imprudence claims based on underperformance, fiduciaries are "required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's

12

menu of options," and if they "fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022); *see DiFelice*, 497 F.3d at 418. As discussed above, a fiduciary also has a duty to monitor an appointee exercising its responsibilities as plan manager. *See Coyne & Delany Co.*, 98 F.3d at 1465–66. Fiduciaries are evaluated based on whether they "employed the appropriate methods to investigate the merits of the investment and to structure the investment," either "at the time they engaged in the challenged transactions" or at the time they failed to do so. *DiFelice*, 497 F.3d at 420 (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001)). Therefore, a plaintiff must allege facts raising a plausible inference that the defendant failed to "undertake a reasoned decision-making process" before the challenged acts or omissions. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 369 (4th Cir. 2014). Such an inference can be drawn from underperformance, so long as that inference is plausible under the ordinary Rule 12(b)(6) pleading standards. *See Hughes*, 142 S. Ct. at 742; *see also Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021–22 (9th Cir. 2025) (stating that an imprudence claim based on circumstantial evidence requires "some further factual enhancement" to defeat a Rule 12(b)(6) motion, such as a "relevant comparator [fund] with similar objectives" (citation omitted)), *cert. granted*, No. 25-498, 2026 WL 120679 (U.S. Jan. 16, 2026).

Here, Plaintiffs allege that the LMIMCo TDFs' annualized net returns underperformed those of TDFs offered by Capital Group, Fidelity, and T. Rowe Price by 0.46% per year to 1.95% per year in the 10 years up to and including 2024. They also allege that, when measured by trailing three-year returns, the LMIMCo TDFs underperformed relative to an average of the Capital Group, Fidelity, and T. Rowe Price TDFs by 2.87% to 7.16% from 2017 to 2020. Plaintiffs further assert that the S&P Indices, which Defendants had identified as appropriate benchmarks for measuring

the performance of the LMIMCo TDFs, outperformed the LMIMCo TDFs by from 0.34% per year to 1.09% per year over the 10 years ending in 2024. When measured by three-year trailing returns, all but two of the LMIMCo TDFs underperformed the S&P Indices during the period from 2017 to 2020, by from 0.19% to 7.14%.

Defendants seek dismissal of the imprudence claim in Count 1 on the grounds that allegations based only on poor performance outcomes cannot demonstrate imprudence, that the alleged underperformance is of insufficient magnitude as a matter of law, and that the funds alleged to be better performing than the LMIMCo TDFs are too dissimilar to serve as meaningful comparators. As for the first argument, Defendants cite cases such as *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), in which the court stated that "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty," *id.* at 1166, and *Hall v. Capital One Financial Group*, No. 22-CV-857-MSN, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023), in which the court granted a motion to dismiss an imprudence claim in relation to TDFs that had underperformed four other TDFs over a five-year period because "ERISA simply does not provide a cause of action for fiduciary breaches based solely on a fund participant's disappointment in the fund's performance," *id.* at *6.

The United States Court of Appeals for the Fourth Circuit, however, has not reached this conclusion. Even if it had concluded that allegations of underperformance are alone insufficient, Plaintiffs' allegations are not so limited. In contrast to the plaintiffs in *Hall*, who relied "solely on the performance" of the challenged TDFs, *id.* at *5, Plaintiffs in this case have alleged additional facts in support of a claim of imprudence, including that the underperforming LMIMCo TDFs

14

were established and managed in-house, with potential financial benefits to Lockheed Martin. *See Feinberg v. T. Rowe Price Grp., Inc.*, No. MJG-17-0427, 2018 WL 3970470, at *2, *5–7 (D. Md. Aug. 20, 2018) (denying a motion to dismiss an imprudence claim based in part on the allegation that the defendants "chose their own funds for the 401(k) Plan because of the financial benefit to the company regardless of the detriment to the Plan's participants"). They also allege that Defendants were on notice of LMIMCo's deficiencies in selecting funds based on a prior lawsuit that resulted in a $62 million settlement in 2015 and an internal review of the performance of the Plans' funds in 2019.

On the second argument, Defendants invoke case law which, they argue, holds that evidence of underperformance in the range of 1% to 5% is not "material" and is therefore insufficient to support a claim of imprudence. Mot. Dismiss at 12. Again, the Fourth Circuit has not imposed any such categorical rule, and Defendants have not identified any other circuit that has done so. District court cases in this circuit have reached different conclusions on this question. *Compare Enstrom v. SAS Inst.*, No. 24-CV-105, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025) (stating that underperformance as compared to a benchmark of 1% to 4% based on three-year and five-year rolling returns "fails to state a plausible ERISA claim") *with Carter v. Sentara Healthcare Fiduciary Comm.*, No. 25-CV-16, 2025 WL 2427614, at *5 (E.D. Va. Aug. 11, 2025) (rejecting *Enstrom*'s finding that underperformance of 1% to 4% is insufficient, declining to find that underperformance of 1.36% is categorically insufficient, and stating that "this kind of bright-line rule seems inappropriate at the motion-to-dismiss stage"). Notably, the Fourth Circuit has stated more generally that the evaluation of whether an investment is imprudent "is not a general one" and "must depend on the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time," *Tatum*, 761 F.3d at 358 (quoting *DiFelice*, 497 F.3d at

15

420), which would "seem to run counter to the idea that the Fourth Circuit would create a firm boundary" below which the magnitude of underperformance would be necessarily insufficient, irrespective of any other circumstances in the case. *See Carter*, 2025 WL 2427614, at *5 & n.6. Drawing such a rule from various district court cases is problematic in part because the metrics used to assess underperformance differ across cases. *See, e.g., Enstrom*, 2025 WL 685219, at *5 (measuring underperformance based on three-year and five-year rolling returns); *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wmc, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024) (measuring underperformance based on three- and five-year trailing averages); *Bekker v. Neuberger Berman Grp. LLC*, No. 16-cv-6123, 2018 WL 4636841, at *2 (S.D.N.Y. Sept. 27, 2018) (measuring underperformance based on annualized returns over a 10-year period). Therefore, the Court will not dismiss the imprudence claim in Count 1 on the basis that the quantification of the underperformance is necessarily too low.

As for Defendants' argument that the comparators are insufficiently similar, courts have held that a "meaningful benchmark" is required for an imprudence claim based on underperformance, but "there is no one-size-fits-all approach" to defining the benchmark. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280–81 (8th Cir. 2022) (citation omitted); *Anderson*, 137 F.4th at 1022, 1025 (stating, in a case in which certiorari has been granted, that an allegation of "a relevant comparator with similar objectives" is required at the motion-to-dismiss stage and that the district court may "assess the similarities and differences" between funds in order to determine whether a comparator is appropriate). Here, Plaintiffs have identified TDFs from Capital Group, Fidelity, and T. Rowe Price and asserted that each comparator, "[j]ust like the LMIMCo TDFs, . . . incorporates active management, has a through retirement glidepath, and seeks to invest in an optimal mix of investments for investors aiming to retire around the stated

vintage year." Am. Compl. ¶ 92. Defendants deem the allegations of similarity insufficient, contest whether the Fidelity TDFs are actively managed, and argue that the Court should require greater factual specificity on "when [the TDFs] reach their most conservative allocation" on their glidepath and "whether the funds invest similarly in terms of, for example, equity-to-bond ratios, use of emerging markets vs. domestic equities, and inclusion of other diversifiers." Mot. Dismiss at 17. Where Plaintiffs have alleged that these comparator funds are similarly actively managed TDFs focused on supporting retirement in the same time frames, Defendants' demands for such granular analysis are more appropriately addressed after more factual development, rather than at the motion-to-dismiss stage. *See, e.g., In re MedStar ERISA Litig.*, No. RDB-20-1984, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021) (noting that, in evaluating a claim of underperformance, "[c]ourts have specifically held that the determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage"). Moreover, Plaintiffs have also compared the LMIMCo TDFs to the S&P Indices, which Defendants themselves have described to plan participants as "benchmarks" for those funds. Am. Compl. ¶ 85. Viewing the allegations in the light most favorable to Plaintiffs, as is required at this early stage, the Court finds that the Amended Complaint adequately alleges appropriate comparators for the LMIMCo TDFs. Therefore, the Court will not dismiss the imprudence claim in Count 1.

### 2. Count 3: Management Fees

Defendants also seek dismissal of the breach of fiduciary duty claim in Count 3 based on imprudence in relation to management fees, which is premised on the allegation that Defendants "paid themselves tens of millions of dollars in connection with services they purported to provide . . . even though lower-cost and superior providers of management services were readily available." *Id.* ¶ 149. As to this count, Plaintiffs do not invoke as comparators the actively

managed retirement TDFs referenced in relation to the claim in Count 1 but instead focus on Vanguard TDFs and "non-LMIMCo-branded" index funds available within the Plans as investment options, all of which offered lower fees than the LMIMCo TDFs. *Id.* ¶¶ 98–99. In discussing management fees, Plaintiffs acknowledged that certain unnamed, actively managed TDFs imposed higher fees than the LMIMCo TDFs, but they asserted that such fees were offset by superior performance. According to Figure 5 of the Amended Complaint, the Vanguard TDFs all had lower expense ratios and higher annualized 10-year net returns than the LMIMCo TDFs for all target years.

Even accepting these allegations as true, the Court does not find that they support a claim for a breach of the fiduciary duty of imprudence based on unreasonably high fees. As with imprudence claims based on underperformance, such claims based on unreasonable management fees generally require allegations of a "meaningful benchmark." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023) (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). A "court cannot reasonably draw an inference of imprudence simply from an allegation that a cost disparity exists"; rather a plaintiff must instead allege facts showing that the funds are "comparable" in a way that "permit[s] an apples-to-apples comparison." *Id.* at 1149.

Here, where there is no dispute that the LMIMCo TDFs are actively managed, any meaningful comparator to the LMIMCo TDFs should similarly be an actively managed fund. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022) (rejecting an imprudence claim based on the assertion that "some of the Plan's actively managed funds were too expensive" in part because "[t]he fact that actively managed funds charge higher fees than passively managed funds is ordinarily not enough to state a claim"); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484–85 (8th Cir. 2020) (in relation to an imprudence claim based on the failure to monitor and

remove an investment option, stating that a passively managed real estate index fund is not a meaningful comparator for an actively managed real estate fund in part because "their management approaches differ"); *see also Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 473–74 (4th Cir. 2026) (noting the differences between actively and passively managed funds in the context of an imprudence claim based on underperformance and directing the district court, on a motion for class certification, to analyze whether such funds "could appropriately be compared").

The Amended Complaint, however, does not allege that the Vanguard TDFs or the generic index funds are actively managed such that their lower management fees can be meaningfully compared to those of the LMIMCo TDFs. Plaintiffs assert that the fees are nevertheless unreasonable because the LMIMCo TDFs "fail[ed] to offer even the middling investment returns provided by low-cost funds" like the Vanguard TDFs, which outperformed the LMIMCo TDFs while charging lower fees. Am. Compl. ¶ 100. Where Plaintiffs do not allege that the Vanguard TDFs are actively managed, and where they have conspicuously failed to compare the LMIMCo management fees to those of the three actively managed funds designated as comparators for Count 1, the Court does not find that the allegations warrant an inference of imprudence based on unreasonable management fees. *See Matney*, 80 F.4th at 1149 (stating that, for an imprudence claim based on high fees, "the complaint must state facts to show the funds or services being compared are, indeed, comparable"). Accordingly, the Motion will be granted as to the imprudence claim in Count 3.

### C.    Duty of Loyalty

Defendants also seek dismissal of the claims in Counts 1 and 3 for breach of the fiduciary duty of loyalty. The disloyalty claim in Count 1 is based on the allegation that Defendants "acted in their own interest" when they selected their own, in-house TDFs as "the only TDFs offered as

investment options in the Plans, even though superior TDFs were readily available." Am. Compl. ¶¶ 129–130. As discussed above, the Court has found that Plaintiffs have adequately alleged underperformance of the LMIMCo TDFs that caused a loss to the Plans so as to support a claim of a breach of the duty of imprudence. *See supra* part II.B.1. Plaintiffs have further alleged that Defendants maintained the underperforming TDFs as default investment options "because the fees paid to LMIMCo funded Defendants' operations" and "compensate[d] LMIMCo executives, whom Lockheed considered and treated as its own." Am. Compl. ¶¶ 102, 107. Under these circumstances, Plaintiffs have plausibly alleged that Defendants did not "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Thus, the Motion will be denied as to the disloyalty claim in Count 1.

Defendants also seek dismissal of the disloyalty claim in Count 3. Where the Amended Complaint fails to state a claim for a breach of the duty of imprudence based on unreasonable management fees, *see supra* part II.B.2, the fact that the LMIMCo TDFs were in-house funds is insufficient to demonstrate that Defendants failed to act solely in the interest of the plan participants and beneficiaries by selecting those funds, even with their particular management fees. The Motion will therefore be granted as to the disloyalty claim in Count 3.

## III.    Prohibited Transaction Claims

In addition to codifying the fiduciary duties of prudence and loyalty, ERISA also "categorically bar[s] certain transactions deemed likely to injure the pension plan." *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1025 (2025) (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000)). The statute enumerates three categories of such transactions, two of which are at issue in this case. First, ERISA bars certain transactions between the plan and a party in interest. 29 U.S.C. § 1106(a)(1). Second, ERISA bars certain transactions

20

between the plan and a fiduciary. *Id.* § 1106(b). In a separate section, ERISA provides that certain transactions are exempted from the prohibitions in § 1106 or are not prohibited by § 1106. *Id.* § 1108(b), (c). In Counts 4 and 5 ("the prohibited transaction claims"), Plaintiffs allege that Defendants engaged in three prohibited transactions in the two categories.

### A.     29 U.S.C. § 1108(c)(2)

Defendants first assert that the prohibited transaction claims must be dismissed because Plaintiffs failed to plead that the exception set forth in 29 U.S.C. § 1108(c)(2) does not apply. That provision states that "[n]othing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." 29 U.S.C. § 1108(c)(2). Defendants' argument is foreclosed by recent precedent. Last year, in *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025), the United States Supreme Court considered "whether a plaintiff can state a claim for relief by simply alleging that a plan fiduciary engaged in a transaction proscribed by § 1106(a)(1)(C), or whether a plaintiff must plead allegations that disprove the applicability" of an exemption enumerated in § 1108(b). *Id.* at 1027. The Court held that a plaintiff "need only plausibly allege each of [the] elements of a prohibited-transaction claim" and that the "exemptions set forth in a different part of the statute, § 1108, do not impose additional pleading requirements." *Id.* Rather, the § 1108 exemptions are affirmative defenses that "must be pleaded and proved by the defendant who seeks to benefit from them." *Id.* at 1028. Defendants attempt to distinguish *Cunningham* because that case dealt with an exemption in § 1108(b) rather than § 1108(c), and because the heading of § 1108(c) refers to transactions that are "not prohibited by section 1106" rather than "exempted from section 1106 prohibitions," *see* 29 U.S.C. § 1108(b)–(c), but the Court finds no basis to conclude that § 1108(c) should be treated

differently and found to impose a pleading requirement rather than identify an affirmative defense. *See Cunningham*, 145 S. Ct. at 1028. Defendants are free to assert and establish this affirmative defense at a later stage of the case.

**B.     Count 4:  29 U.S.C. § 1106(a)**

Defendants seek dismissal of the prohibited transaction claims in Count 4, in which Plaintiffs allege that Defendants caused three prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. § 1106(a). ERISA defines a "party in interest" in relation to an employee benefit plan to include a "fiduciary" of the plan, "a person providing services to the plan," and "an employer any of whose employees are covered by the plan." *Id.* § 1002(14). This definition encompasses both Defendants.

As to the prohibited transactions, Plaintiffs first allege that Defendants "cause[d] the plan to engage in a transaction" that "constitutes a direct or indirect . . . lending of money or other extension of credit between the plan and a party in interest," *id.* § 1106(a)(1)(B), when they caused the Plans, through the Master Trust, to accept credit from Lockheed and when Lockheed extended credit to the Plans at other times. Next, Plaintiffs allege that Defendants "cause[d] the plan to engage in a transaction" that "constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest," *id.* § 1106(a)(1)(C), when they caused the Plans to pay "Lockheed Martin Corporation LMIMCo" for management services. Am. Compl. ¶ 157. Finally, based on that same conduct, Plaintiffs also allege that Defendants cause[d] the plan to engage in a transaction" that "constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D).

As to the first alleged prohibited transaction, an extension of credit under § 1106(a)(1)(B), Defendants argue that this subsection prohibits only extensions of credit in the context of a "debtor-

22

creditor relationship." Mot. Dismiss at 26. Even assuming that is the case, Plaintiffs have alleged that Lockheed extended credit to the Plans in that the Plans, through the Master Trust, owed over $5 million to Lockheed at the end of each of 2021, 2022, and 2023. In support of this allegation, Plaintiffs assert that Lockheed reported in a 2023 IRS Form 5500 for the Salaried Plan that the "Master Trust owed [Lockheed] $5.8 million and $6.0 million as of December 31, 2023 and 2022, respectively for certain expenses paid by [Lockheed] in providing services to the Plan and certain other plans," and that Lockheed similarly reported in a 2022 IRS Form 5500 for the Salaried Plan that the Master Trust owed Lockheed $5.9 million as of December 31, 2021. Am. Compl. ¶ 116. Defendants' assertion that these facts "describe[] ordinary reimbursement of plan-related expenses, not a loan or extension of credit," Mot. Dismiss at 26, is unpersuasive at this stage of the case, where the Court must view the allegations in the light most favorable to Plaintiffs, and application of an affirmative defense not clearly established by the facts in the complaint is premature. The Court therefore finds that Plaintiffs have stated a plausible claim for a prohibited transaction based on an extension of credit under § 1106(a)(1)(B).

As to the second alleged prohibited transaction, a furnishing of services under § 1106(a)(1)(C), Defendants assert that a claim under this subsection requires allegations that the transaction was entered into "in a manner not permitted by ERISA, such as for unreasonable compensation or without proper fiduciary oversight." Mot. Dismiss at 26. However, the Supreme Court in *Cunningham* identified the three elements of a claim under § 1106(a)(1)(C) based on the statutory text only: that (1) a fiduciary caused the plan to engage in a transaction; (2) the fiduciary did so with knowledge that the transaction was for services; and (3) the transaction was between the plan and a party in interest. *Cunningham*, 145 S. Ct. at 1027. Plaintiffs have alleged these three elements based on their assertions that Defendants caused the plans to pay "Lockheed Martin

Corporation LMIMCo" for management services. Am. Compl. ¶ 157. Where the Supreme Court has stated that the prohibition in § 1106(a)(1)(C) is "categorical" and that "[a]ny transaction that satisfies its three elements is presumptively unlawful," *Cunningham*, 145 S. Ct. at 1027, the Court declines Defendants' invitation to impose additional pleading requirements on this claim. The Court thus finds that Plaintiffs have stated a plausible claim for a prohibited transaction under § 1106(a)(1)(C) based on the furnishing of services.

As for the third prohibited transaction, a transfer of plan assets to a party in interest under § 1106(a)(1)(D), Plaintiffs have plausibly alleged such a claim by alleging that Defendants caused the Plans to make payments to "Lockheed Martin Corporation LMIMCo," which Defendants acknowledge consists of one or both Defendants. Am. Compl. ¶ 158; Notice at 1. Defendants again assert that the transactions forming the basis for this claim fall outside the scope of the prohibition because they were "routine administrative reimbursements tied to services required" for the administration of the Plans. Mot. Dismiss at 28. As with the other prohibited transaction claims in Count 4, this argument is not persuasive at this early stage of the case, where the Court must view the allegations in the light most favorable to Plaintiffs and it is premature to dismiss claims based on affirmative defenses not clearly established on the face of the complaint. The cases cited by Defendants do not provide a basis for dismissal because they deal with materially different payments or address the requisite proof at summary judgment. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 892 (1996) (holding that the "payment of benefits to plan participants and beneficiaries" is not a transaction covered by § 1106(a)(1)(D)); *Reich v. Compton*, 57 F.3d 270, 279 (3d Cir. 1995) (requiring, at the summary judgment stage, proof of the fiduciary's subjective intent to benefit a party in interest). Thus, at this early stage, the Court concludes that Plaintiffs

24

have stated a viable claim for a prohibited transaction based on the transfer of plan assets. The Motion will be denied as to Count 4.

### C.     Count 5:  29 U.S.C. § 1106(b)

Defendants also seek dismissal of Count 5, which alleges prohibited transactions between a plan and a fiduciary under 29 U.S.C. § 1106(b).  Specifically, Count 5 alleges that Defendants caused the Plans to pay "Lockheed Martin Corporation LMIMCo" for deficient management services and also caused the Plans to accept or repay more than $5 million in credit from Lockheed, as evidenced by the documentation that the Plans owed more than $5 million to Lockheed.  Am. Compl. ¶¶ 164–166.  Plaintiffs allege that this conduct violated three prohibitions under § 1106(b): that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1), "act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," id. § 1106(b)(2), or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan," id. § 1106(b)(3). As discussed above, both Lockheed and LMIMCo are fiduciaries with respect to the Plans.  See supra part II.A.

The Court's analysis relating to Count 4 largely applies to Defendants' arguments for dismissal of the claims under § 1106(b).  As with Count 4, the allegations that the Plans borrowed money from Lockheed, at this early stage, could support a finding of a prohibited transaction.  See Reich, 57 F.3d at 289 (stating that under § 1106(b)(2), "when a plan loans money to or borrows money from another party, the plan and the other party will have adverse interests within the meaning" of that provision).  Although Defendants again assert that the transactions forming the basis for this claim were "reimbursements for LMIMCo's direct expenses," Mot. Dismiss at 28,

25

as with Count 4, this argument relies on an affirmative defense properly considered at a later stage in the case. *See Cunningham*, 145 S. Ct. at 1027. Although Defendants argue, in relation to § 1106(b)(2) and (3), that transactions are prohibited only if they "involve[] a third party transacting with the plan (and not just a transaction between a fiduciary and a plan)," Mot. Dismiss at 29, this interpretation is not supported by the statutory language, which refers to "a party . . . whose interests are adverse to the interests of the plan" and "any party dealing with such plan" and thus does not require a third party beyond the two fiduciaries at issue here. 29 U.S.C. § 1106(b)(2)–(3). Although Defendants may be able to present evidence that the transactions at issue were proper under the statute and its affirmative defenses, at this early stage, the Court finds that the claims in Count 5 are sufficiently pleaded. The Motion will thus be denied as to Count 5.

## IV.    Jury Demand

Lastly, Defendants move to strike Plaintiffs' demand for a jury trial. Plaintiffs have filed this action pursuant to the civil enforcement provision of ERISA, which permits a "participant, beneficiary, or fiduciary" to seek injunctive or equitable relief for ERISA violations, including restoration of profits or losses resulting from a breach of fiduciary duty under 29 U.S.C. § 1109. *See* 29 U.S.C. § 1132(a)(2)–(3). Specifically, Plaintiffs seek an order requiring the "disgorgement of all sums derived from the improper transactions" and "disgorgement of all profits accumulated from Defendants breaches' of their duties." Am. Compl. at 40. This requested relief is equitable in nature. *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011) (interpreting ERISA and stating that "relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment," is equitable relief). Because ERISA is silent on the right to a jury trial and Plaintiffs seek equitable relief, neither the statute nor the Seventh Amendment to the United States Constitution confers such a right for actions brought under 29

U.S.C. § 1132(a)(2) or (3). *See Tull v. United States*, 481 U.S. 412, 417 (1987) (stating that "actions that are analogous to 18th-century cases tried in courts of equity . . . do not require a jury trial" under the Seventh Amendment); *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 222 (4th Cir. 2005) (noting that ERISA does not specifically provide for a jury trial and holding that 29 U.S.C. § 1132(a)(3) "entails no right to a jury trial" because it provides for "only equitable remedies"); *Perez v. Silva*, 185 F. Supp. 3d 698, 701–05 (D. Md. 2016) (concluding that monetary relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of restoration of losses resulting from a breach of a fiduciary duty is equitable in nature and therefore does not implicate the right to a jury trial). The Court will therefore grant Defendants' request to strike Plaintiffs' demand for a jury trial.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that Count 3 will be DISMISSED WITHOUT PREJUDICE and the jury trial demand will be STRICKEN. It will otherwise be denied. A separate Order shall issue.

Date: April 16, 2026

THEODORE D. CHUANG
United States District Judge

27